[No. 7588.   Decided March 26, 1909.]

C. V. NELSON, *Appellant*, v. TITLE TRUST COMPANY, *Respondent*.[1]

SPECIFIC PERFORMANCE—RELIEF — ACTIONS — FORM — VENDOR AND PURCHASER—RESCISSION OR DAMAGES.   An action to compel the vendor to carry out his contract to convey certain lots as pointed out, or in the alternative for a rescission and return of purchase money, should not be dismissed for failure of proof where the plaintiff's evidence shows that he is entitled to damages or relief of any kind.

PRINCIPAL AND AGENT — FRAUD OF SUBAGENT — VENDOR AND PURCHASER.   The owner of lots is responsible for fraudulent representations of a subagent employed by the firm who had a contract with the owner to sell the addition, where the owner was the beneficiary of the transaction.

VENDOR AND PURCHASER—RESCISSION BY VENDEE—FRAUD OF AGENT —MISREPRESENTING LAND.   The purchaser of lots is entitled to relief for fraud where it appears that an agent, authorized to sell and provided with a plat indicating a park that did not exist, showed the lots as staked on the ground, and the park, and after a temporary contract was made and money paid, the stakes shown were moved and a new plat filed, cutting off part of the lots shown as desirable for a building site, and platting the park site into lots, affecting the value of the lots sold.

SAME—DEFENSES—NEGLIGENCE OF VENDEE.   In such a case, the fact that the new plat was filed before the contract was consummated, and that the contract recited that the purchaser had examined the lots as replatted, would not preclude a recovery because of negligence, where the plaintiff lived a long distance from the lots, was not aware of the change, and was misled into signing the contract.

[1]Reported in 100 Pac. 730.

Appeal from a judgment of the superior court for King county, Morris, J., entered February 8, 1908, dismissing at the close of plaintiff's case, an action for specific performance or in the alternative for a rescission of a contract to convey land, after a trial before the court without a jury. Reversed.

*Willett & Willett* and *Raymond G. Wright,* for appellant.

*Cutts & Dorety (M. M. Lyter,* of counsel), for respondent.

DUNBAR, J.—The defendant, Title Trust Company, on November 3, 1906, was owner of what is known as "Delmar Park Addition to the City of Seattle." On November 3, 1906, J. F. Erickson, an agent of the defendant, sold the plaintiff lots 8 and 9, of block 2, of said addition, signing what might be termed a temporary contract for the purchase of said lots. Erickson showed plaintiff a plat of Delmar Park addition, and pointed out to him the land marked "Park" on a blue print of said addition that he had with him. He also showed him the grade stakes of the streets, and the stakes which marked lots 8 and 9, in block 2. According to the complaint of the plaintiff, relying on these representations, he agreed to purchase said lots 8 and 9 for $3,000, and paid down the sum of $300. By the terms of the contract, $700 more was to be paid on signing a permanent contract, $1,000 in nine months, and $1,000 in eighteen months.

After the selection and purchase of the lots aforesaid, plaintiff went to Bellingham, where he lived, and did not return until about the 28th of December, 1906. In the meantime the defendant had changed the stakes to lots 8 and 9, in block 2, shortening the lots by from eighteen to nineteen feet, and cutting off the level part of the lots which Erickson, the agent, had pointed out to plaintiff as adapted for building purposes. The park which was marked and pointed out originally had been platted into lots to be sold, and this second plat was filed with the auditor. Not knowing anything

of the changes made, plaintiff entered into the contract, paying the $700 required. The complaint also alleges other derelictions on the part of defendant, viz., that it had agreed to grade, lay cement walks, put in water mains, etc., and had failed to do so at the time of the commencement of this action.

After signing the contract, plaintiff returned to Bellingham, and did not return to Seattle until June, 1907, when he alleges that he, for the first time, learned of the changes in and about his lots, and of the failure of the defendant to carry out its contract, and this action was brought to compel defendant to carry out its contract and convey lots 8 and 9 as first staked on November 3, 1906, and for damages done, or in the alternative for a rescission of the contract, a return of the money, and additional damages, and for general relief. The defendant answered, denying the main allegations of the complaint, and interposing a cross-action for a forfeiture of the contract against plaintiff. To this cross-action, plaintiff answered. On the close of the plaintiff's case, defendant moved for a dismissal. The court granted the motion, which also carried the dismissal of the cross-complaint with it. Plaintiff moved for a new trial on the ground of the insufficiency of the evidence to justify the decision, and that the decision was against the law, and error in law occurring at the trial and excepted to at the time by plaintiff.

In passing upon the motion to dismiss, the court said:

"It may be you have an action for damages in a court of law. I am not prepared to say. I am not convinced of that, but I do not think you can maintain this case with this proof. The motion is granted and exception allowed to the plaintiff."

If the appellant had proved a cause of action of any kind, under the uniform holdings of this court he ought not to have been dismissed from the court burdened with costs and compelled to commence another action. We judge from the remarks interjected by the court during the trial that it entertained the view that the owner of the land was not responsible to the purchaser for the fraudulent representation of

its selling agent. This, we think, was a wrong theory of the
law. The owner is the beneficiary of the sale. The salesmen
are his agents, and under the ordinary rule of agency the
owner is responsible for the representations of his agent made
in the line of his employment. It is true that the agency in
this case is one degree removed, Erickson who sold the lots to
appellant having been employed by Arnold & Nachant, the
firm who had a contract with the owner to sell the addition,
Arnold & Nachant agreeing to divide with Erickson their
commission on lots sold by him. But this was a mere detail as
to the manner of sale by Arnold & Nachant. The owner was
still equally the beneficiary of the transaction, and it would
tend to encourage fraudulent misrepresentation if such owner
were allowed to escape responsibility through the subterfuge
of having the sale made by a subagent. It must not be al-
lowed to disclaim responsibility and at the same time receive
the benefit of the fraudulent transaction.

In this case Erickson testifies, that he was authorized to
sell this land; that he was provided with a plat of the land
which showed a park that did not exist, and which showed the
location of the lots which appellant bought; that he pointed
out the lots to the appellant, on the face of the earth, as they
were indicated and staked off, that they were bought by the
appellant with reference to said  stakes; and that the agent
pointed out to the purchaser the topographical advantages,
especially calling his attention to the fact, as an inducement
to buy, that there was a nice level building place on the lots;
that after appellant purchased, the stakes were moved eighteen
or nineteen feet, completely changing the character and value
of the land, and that the land described on the new plat was
not, to that extent, the land purchased by the appellant; that
the park did not appear on the second plat, and that there
were material changes in many ways, rendering the lots sold
less valuable. It is true that, at the time the contract was
entered into, the new plat was filed; and it is also true that
the contract recites that the appellant was acquainted with

the title to, and the location of, the lots, and that he had examined the property as at present platted and staked. But we think it plainly appears that he was misled into signing this contract; that he was not aware that the stakes had been changed and that he was not guilty of such a degree of negligence as should preclude him from recovering because he did not make a second examination of the lots. He lived at a long distance from the lots. He had them pointed out to him once by the agent of the owner, and it would not naturally occur to him that there was any necessity to view them again.

On the record before us, we think the appellant was entitled to relief, but as the testimony of the respondent is not before us, even though it is responsible for the fact, a new trial will be granted. It is so ordered.

RUDKIN, C. J., FULLERTON, MOUNT, CROW, GOSE, and CHADWICK, JJ., concur.